UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

EVA D. B.,  )
            )
   Plaintiff, )
            )
v.          )   Case No. 19-CV-497-CDL
            )
KILOLO KIJAKAZI, )
Acting Commissioner of the )
Social Security Administration,[1] )
            )
   Defendant. )

**OPINION AND ORDER**

Plaintiff seeks judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c)(1), (2). For the reasons set forth below, the Court **reverses** the Commissioner's decision denying benefits and **remands** for further proceedings.

**I.    Standard of Review**

The Social Security Act (the Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d)(1), Kilolo Kijakazi is substituted as the defendant in this action, effective upon her appointment as Acting Commissioner of Social Security in July 2021. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled and, therefore, entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work.[2]

---

[2] Step four includes three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ first determines the claimant's residual functional capacity (RFC) based on all the relevant medical and other evidence. 20 C.F.R. § 404.1520(e). The ALJ next determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC from phase one allows the claimant to meet the job demands found in phase two. *Id.*

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in significant numbers in the national economy, in light of the claimant's age, education, and work experience. *Id.*

Judicial review of a Commissioner's disability determination "'is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence.'" *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citing *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

## II. Procedural History

Plaintiff filed applications for disability benefits under Title II and Title XVI of the Act on January 1, 2015. Plaintiff has not worked since 2009, and she alleged a disability

3

onset date of December 31, 2009. Based on Plaintiff's previous work, which included jobs as a graphic designer and customer service representative, Plaintiff's date last insured (DLI) for Title II purposes was December 31, 2014. She was 53 years old on her DLI. (R. 144).

Plaintiff alleges disability due to depression, coronary atherosclerosis, hypertension, hypercholesteremia, sciatica, back problems, left hand problems, headaches, vertigo, sleep disorder, and vision problems. *Id*. She alleges a history of violent domestic abuse, including experiencing abduction and rape by her former spouse. Plaintiff alleges that she became unable to work in 2009, after learning that the former spouse had kidnapped another individual and had committed suicide while being pursued by police. Plaintiff alleges that this event triggered her PTSD, rendering her unable to work.

In 2017, following a hearing, an Administrative Law Judge (ALJ) found that Plaintiff had severe impairments of hypertension and coronary artery disease (CAD). (R. 168). Despite these impairments, the ALJ determined that, prior to April 1, 2015—approximately three months after her DLI—Plaintiff had an RFC for the full range of light work. Based on testimony from a VE, that RFC would enable Plaintiff to perform her past relevant work through her DLI. Accordingly, the ALJ found Plaintiff was not disabled at any time prior to her DLI, and therefore does not qualify for benefits under Title II. (R. 173-174).

However, the ALJ further found that, beginning on April 1, 2015, Plaintiff had additional severe impairments of depression, spine disorder, osteoarthritis in the hands and left shoulder, coronary artery disease (status/post myocardial infarction and status/post

4

mid-right coronary stent), post-traumatic stress disorder (PTSD), and general anxiety disorder. (R. 168-169). The ALJ found that, beginning on April 1, 2015, Plaintiff's RFC was limited to sedentary work, with specified additional physical and mental limitations:

> [Plaintiff] is able to lift, carry, push or pull up to five pounds frequently and 10 pounds occasionally; able to sit for up to six hours in an eight-hour workday; able to stand and/or walk up to two hours in an eight-hour workday; able to occasionally climb ramps or stairs; should never climb ladders, ropes or scaffolds; able to occasionally reach or handle with the left, non-dominant upper extremity; able to perform simple, routine & repetitive tasks; able to occasionally interact with supervisors as needed to receive work instructions; able to work in proximity to co-workers but should have no more than occasional direct work interaction with co-workers; and should never interact with the general public.

(R. 171). Based on the testimony of a VE, the ALJ found that this RFC prevents Plaintiff from performing her past relevant work. (R. 174).

With a sedentary RFC, the Medical-Vocational Guidelines (Grids) direct a finding of disabled, due to Plaintiff's age and vocational factors. Accordingly, for the purpose of Title XVI benefits, the ALJ found Plaintiff disabled beginning on April 1, 2015. (R. 175). However, Plaintiff was later found ineligible for Title XVI benefits based on criteria other than disability.

On May 22, 2018, the Appeals Council (AC) affirmed the ALJ's finding that Plaintiff was disabled beginning on April 1, 2015. (R. 185). However, the AC vacated the hearing decision with respect to the issue of disability prior to April 1, 2015. *Id*. On remand, the AC directed the ALJ to address the severity of Plaintiff's diagnosed mental impairments prior to April 1, 2015. (R. 185-186). The AC further directed the ALJ to "[g]ive further consideration to [Plaintiff's] maximum [RFC] and provide appropriate rationale with

specific references to evidence of record in support of the assessed limitations." (R. 186). Additionally, the ALJ was directed, "[i]f warranted by the expanded record, [to] obtain evidence from a [VE] to clarify the effect of the assessed limitations on [Plaintiff's] occupational base." *Id*.

## III.   Decision on Review

The ALJ held a second hearing on September 5, 2018. Testimony was given by the Plaintiff and a VE. (R. 29-57). On October 4, 2018, the ALJ issued a second decision, denying disability benefits and finding Plaintiff not disabled for the period prior to April 1, 2015. (R. 10-28). The Appeals Council affirmed the decision on April 16, 2020. (R. 1). Accordingly, the Court has jurisdiction to review the ALJ's decision under 42 U.S.C. § 405(g).

At step one, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 31, 2009. (R. 15-16). At step two, the ALJ determined that, during the period between December 31, 2009 and March 31, 2015, Plaintiff had severe impairments of hypertension, CAD, major depressive disorder, generalized anxiety disorder, and PTSD. (R. 16). At step three, the ALJ found that Plaintiff's physical and mental impairments do not meet or equal the criteria for any Listing. In reaching this conclusion, the ALJ considered the Listings under Sections 4.00 (cardiovascular system) and 12.00 (Mental disorders).

With respect to Plaintiff's mental impairments, the ALJ addressed the "paragraph B" criteria—the four areas of mental functioning listed in the agency's psychiatric review

6

technique (PRT). *See* 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found that Plaintiff has **moderate** limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and a **mild** limitation in adapting or managing oneself. (R. 16-17). Because Plaintiff's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the ALJ found that the paragraph B criteria are not satisfied. (R. 17).

At step four, the ALJ determined that, during the period ending March 31, 2015, Plaintiff had the RFC to perform to perform light work, specifically:

> [Plaintiff] is able to lift/carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; able to sit for up to six hours in an eight hour workday; able to stand and/or walk up to six hours in an eight hour workday; able to perform simple, routine and repetitive tasks; able to occasionally interact with supervisors and co-workers; and should never interact with the general public.

(R. 17). Citing the VE's hearing testimony in response to a hypothetical reflecting these limitations, the ALJ found that Plaintiff cannot return to her past relevant work. (R. 20-21). Accordingly, the ALJ proceeded to step five.

Citing the VE's hearing testimony, the ALJ determined that, during the period ending on March 31, 2015, Plaintiff had the RFC to perform the requirements of "representative occupations," such as:

- *Small product assembler*, DOT # 706.684-022, with 190,000 jobs estimated nationally;

- *Merchandise marker*, DOT # 209.587-034, with 309,000 jobs estimated nationally; and

- *Electrical accessory assembler*, DOT # 729.687-010, with 26,000 jobs estimated nationally.

(R. 21-22). The ALJ also found that these jobs exist in significant numbers in the national economy. Accordingly, the ALJ found Plaintiff not disabled at step five for the period of December 31, 2009 through March 31, 2015. *Id*.

**IV.    Discussion**

Plaintiff argues that the RFC determination for the period prior to April 1, 2015 is not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ's RFC findings failed to account for the existence of certain mental and physical impairments, and their resulting functional limitations. Plaintiff contends that the RFC determination, for a limited range of light work, is arbitrary and is inconsistent with the prior determination that—as of April 1, 2015—Plaintiff had additional severe impairments and functional limitations, including a limitation to sedentary work.

With respect to physical impairments, the record considered by the ALJ included records of emergency room visits on several occasions, in 2013 and 2014, with complaints of chest pain and other symptoms. (R. 18-19). Plaintiff was assessed with severe single-vessel coronary artery disease in March 2013. In June 2013, Plaintiff was diagnosed with hypertensive emergency. (R. 19). In October 2014, she was diagnosed with non-cardiac chest pain, CAD, hypertension, anxiety disorder, and tobacco abuse. *Id*.

Plaintiff had no additional treatment records for her physical impairments prior to her DLI. However, an April 1, 2015 consultative examination with Nick Lee Carroll, D.O., indicated that Plaintiff complained of left-hand pain, left-arm pain and weakness, and low back pain, and significant difficulty with bending. (*See* R. 171). Dr. Carroll noted "significant" osteoarthritis in both of Plaintiff's hands, with hypertrophic joints and "swan-

neck" deformity, with these symptoms appearing worse on the left side. *Id*. Plaintiff had problems gripping with her left hand and a reduced range of motion and weakness in the left shoulder. *Id*. Plaintiff also had a reduced range of motion in the lumbar spine, although her straight-leg raising was negative. *Id*. Dr. Carroll diagnosed Plaintiff with left hand osteoarthritis; left shoulder impairment with range of motion and strength (suspected rotator cuff syndrome and/or osteoarthritis), lumbago without evidence of disc disease, uncontrolled depression, uncontrolled PTSD, and CAD/hypertension/dyslipidemia. (*See* R. 171-172).

The ALJ's 2017 opinion cited Dr. Carroll's findings in finding Plaintiff has a sedentary RFC, with additional limitations, as of April 1, 2015. (*See* R. 173 (finding that, due to "significant osteoarthritis" in Plaintiff's hands and "reduced range of motion with weakness in [Plaintiff's] left shoulder," Plaintiff "would be reduced to a sedentary exertional level as of" April 1, 2015)). The Appeals Council affirmed this determination. (*See* R. 185). In contrast, on remand, the ALJ found Plaintiff had an RFC for light work prior to April 1, 2015. However, the ALJ's decision on remand did not refer to Dr. Carroll's consultative examination or acknowledge any of his findings. Implicitly, then, the ALJ found Dr. Carroll's report is not probative of Plaintiff's RFC prior to April 1, 2015.

However, the omission of this evidence from the RFC analysis was reversible error. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting [the] decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Mays*

9

*v. Colvin*, 739 F.3d 569, 576 (10th Cir. 2014) (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)).

The Commissioner's guidelines provide that "[w]e consider all of the evidence of record when we determine whether a claimant meets the statutory development of disability." Social Security Ruling 18-01p, 2018 WL 4945639, at *5. The applicable ruling specifies that, in determining the earliest date on which a claimant has met the definition of disability, the Commissioner "tak[es] into account the date the claimant alleged that his or her disability began," and acknowledge that that date "may predate the claimant's earliest recorded medical examination or the date of the claimant's earliest medical records." *Id*. at *5-6. The ALJ should consider "the severity of the signs, symptoms, and laboratory findings; the longitudinal history and treatment course (or lack thereof); the length of the impairment's exacerbations and remissions, if applicable; and any statement by the claimant about new or worsening signs, symptoms, and laboratory findings." *Id*.

Accordingly, the ALJ had a duty to address Dr. Carroll's April 1, 2015 findings in evaluating Plaintiff's RFC for the period immediately preceding that date. The ALJ's 2017 decision on Plaintiff's claim further confirms the significance of Dr. Carroll's findings, as noted above. By simply ignoring Dr. Carroll's findings on remand, the ALJ failed to acknowledge significantly probative evidence regarding the severity, length, and symptoms of Plaintiff's physical impairments.

It is implausible that Dr. Carroll's findings on April 1, 2015 were probative to Plaintiff's functional limitations beginning on that date, but not earlier. Dr. Carroll's examination was ordered for the purpose of assessing Plaintiff's initial claim for benefits,

10

which alleged Plaintiff's disability onset date as December 31, 2009. Furthermore, Dr. Carroll observed that Plaintiff complained of having certain problems, such as low back pain, "for years," reported mental symptoms relating back to a history of trauma years earlier, and found issues such as "significant" osteoarthritis in Plaintiff's hands. (R. 525-527). Accordingly, by its terms, Dr. Carroll's report addressed issues that had arisen over previous weeks, months, and years. Thus, it was significantly probative evidence that the ALJ should have considered in determining Plaintiff's RFC prior to April 1, 2015.

## V.     Conclusion

For the reasons set forth above, the Court finds the ALJ's decision is not supported by substantial evidence, and the ALJ failed to apply proper legal standards established by the Commissioner and the courts. Therefore, the decision of the Commissioner finding Plaintiff not disabled for the relevant period is **reversed and remanded** for further proceedings consistent with this opinion.

ORDERED this 30th day of September, 2021.

*Christine D. Little*
Christine D. Little
United States Magistrate Judge